



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

BURBERRY LIMITED,<br>
    a United Kingdom Corporation<br><br>
BURBERRY LIMITED,<br>
    a New York Corporation<br><br>
    Plaintiffs,<br><br>
       v.<br><br>
EURO MODA, INC., MODA OGGI, INC.<br>
and JOHN FANNING<br><br>
    Defendants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td></tr>
</table>



Civil Action No.:
COMPLAINT

### COMPLAINT FOR BREACH OF CONTRACT, TRADEMARK COUNTERFEITING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

Plaintiffs Burberry Limited (UK) and Burberry Limited (USA) (collectively "Burberry" or "Plaintiffs") complains and alleges against Defendants Euro Moda, Inc. ("Euro Moda"), Moda Oggi, Inc. ("Moda Oggi"), and John Fanning ("Fanning") (collectively "Defendants") as follows:

### INTRODUCTION

1.    This is an action for breach of contract and for trademark counterfeiting, trademark infringement, trademark dilution and for violations of the New York State common law and related causes of action brought pursuant to Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c), Sections 349 and 360-l of the New York General Business Law, and the common law of the State of New York.

Through this action, Burberry seeks preliminary and permanent injunctive relief and damages arising from Defendants' breach of contract and willful appropriation of several famous and distinctive Burberry trademarks. Upon information and belief, Defendants import, distribute, promote and/or sell counterfeit wearing apparel and related accessories that display counterfeit versions of Plaintiffs' famous trademarks.

2. For approximately a century, Burberry has devoted substantial resources to promoting the goodwill of its principal trademarks, including its BURBERRY® name, a distinctive check design trademark (the "BURBERRY CHECK") and the Burberry equestrian knight on horseback image (the "EQUESTRIAN KNIGHT DEVICE") (collectively, the "Burberry Trademarks"), for a broad variety of goods, including wearing apparel. As a result, these trademarks have become among the most famous marks in this country for such products.

3. Attempting to capitalize on the strength and fame of Burberry's trademarks, Defendants have sold counterfeit merchandise, including scarves, shirts, hats and jackets, that display the Burberry Trademarks or substantially similar reproductions thereof.

4. In an agreement among Euro Moda, John Fanning and Burberry Limited effective on June 30, 2005 (the "Settlement Agreement"), Euro Moda and John Fanning represented and warranted that they would not, in the future, infringe the Burberry Trademarks, or cause, enable or assist any other party's infringement of the Burberry Trademarks.

5. Since the execution of the Settlement Agreement, Burberry has learned that Defendants have continued to sell counterfeit merchandise, including scarves, shirts,

and hats, that display the Burberry Trademarks or substantially similar reproductions thereof.

6.     Upon information and belief, Defendants offered for sale and sold counterfeit Burberry merchandise after execution of the Settlement Agreement to Cohoes Fashions of New York, LLC, Burlington Coat Factory Warehouse Corp., Burlington Coat Factory of New York, LLC, Designers Imports, Inc. and other individuals and/or entities.

7.     Defendants' continued misappropriation of the Burberry Trademarks has significantly injured Burberry's reputation and goodwill, and has diluted the distinctiveness of the famous BURBERRY® name, as well as the BURBERRY CHECK and BURBERRY KNIGHT.  Unless enjoined, Defendants' conduct will continue to injure both Burberry and the public.

## JURISDICTION AND VENUE

8.     This action is based on Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114, Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c), Sections 349 and 360-l of the New York Business Law, and the common law of the State of New York.

9.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) for the claims arising out of the violations of Sections 32(1)(a) and 43(a) and (c) of the Lanham Act; has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the claims arising out of the violation of Sections 349 and 360-l of the New York Business Law and all other claims arising under the common law of the State of New York; and has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 for the claims under the common law of unfair competition.

10.     This Court has personal jurisdiction over Defendants because they are either incorporated in New York or doing business in this district and the products that are the subject of this action are sold in this district.

11.     This Court additionally has jurisdiction over the Defendants pursuant to Paragraph 11 of the Settlement Agreement.

12.     Upon information and belief, a substantial part of the events giving rise to the claims occurred in this district. Venue in this Court is therefore proper under 28 U.S.C. § 1391.

## THE PARTIES

### A. Plaintiffs

13.     Plaintiff Burberry Limited (UK) is a corporation duly organized and existing under the laws of the United Kingdom with a principal place of business at 18-22 Haymarket, SW1Y 4DQ, United Kingdom.

14.     Plaintiff Burberry Limited (USA) is a corporation duly organized under the laws of New York with a principal place of business at 1350 Avenue of the Americas, New York, New York 10019.

15.     Burberry Limited (USA) is an affiliate of Burberry Limited (UK).

### B. Defendants

16.     Upon information and belief, Euro Moda is a New York corporation located at 530 Seventh Avenue, Suite 3008, New York, New York 10008.

17.     Upon information and belief, Moda Oggi, Inc., a New York corporation located at 142 West 38th Street, New York, New York 10018.

18.     Upon information and belief, John Fanning is a principal of Euro Moda and Moda Oggi, Inc. and resides at 200 Broad Street, No. 2146, Stamford, Connecticut 06901.

## BACKGROUND

### A.    Plaintiffs' Famous Trademarks and Products

19.     Plaintiffs' predecessor in interest, Mr. Thomas Burberry, opened an outfitters shop in Hampshire, United Kingdom, more than a century ago, in 1856.  The BURBERRY® name has been used in commerce continuously since that time on various products including clothing, luggage, umbrellas, handbags and other items, and for retail services.

20.     The BURBERRY CHECK trademark – a distinctive red, camel, black and white check logo – was introduced by Mr. Burberry's company in the 1920's and has been used on various products over the years, including clothing, luggage, umbrellas, handbags and other items.  An exemplar of the BURBERRY CHECK is attached as Exhibit A hereto.

21.     The BURBERRY CHECK has been continuously used in both the original colors and other color combinations for over three-quarters of a century.

22.     The EQUESTRIAN KNIGHT DEVICE, as shown in the attached Exhibit A, was introduced by Mr. Burberry's company and has been used on numerous products for approximately a century since its introduction.

23.     Burberry is responsible for designing and/or licensing, assembling, finishing, marketing and selling in interstate commerce high quality clothes, footwear, scarves, luggage, watches, eyeglasses, sunglasses, jewelry, cosmetics, writing

instruments, handbags and many other products displaying the BURBERRY® mark, the BURBERRY CHECK and the EQUESTRIAN KNIGHT DEVICE.

24.    Burberry's merchandise is sold in authorized department stores and boutiques, BURBERRY® stores, online at Burberry.com and in other authorized retail establishments.

25.    Burberry is the exclusive distributor or licensor in the United States of Burberry merchandise that bears the Burberry Trademarks.  The Burberry Trademarks have thus been used by Plaintiffs on, and in connection with, the advertising and sale of Plaintiffs' products, including wearing apparel such as scarves, shirts, hats and jackets, in interstate and intrastate commerce, including commerce in the State of New York, and in this judicial district.  Burberry owns numerous federal registrations for the Burberry Trademarks, as listed in Exhibit A.

26.    These registrations for the Burberry Trademarks are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

27.    Burberry has used the Burberry Trademarks for many years on and in connection with BURBERRY® merchandise.

28.    The Burberry Trademarks identify high quality products originating with Burberry.  Burberry has expended millions of dollars in advertising BURBERRY® products, and has made substantial investments in protecting its marks and logos.

**B.    Defendants' Misappropriation of The Burberry Trademarks**

29.    Upon information and belief, the Defendants are engaged in the business of importing, distributing, supplying, promoting and/or selling wearing apparel and related accessories.

30.     Upon information and belief, Defendants have imported, distributed, supplied, promoted and/or sold counterfeit merchandise, including jackets, shirts, scarves and hats, that displayed marks identical or substantially similar to the Burberry Trademarks. Defendants promoted this merchandise as authentic Burberry merchandise.

31.     Upon information and belief, Defendants have sold counterfeit Burberry merchandise in New York, and throughout the country.

32.     Upon information and belief, Defendants have continued to import, distribute, supply, promote and/or sell counterfeit goods bearing the Burberry Trademarks with knowledge that the merchandise was in fact counterfeit. Through these acts, Defendants have demonstrated that their infringement of the Burberry Trademarks is willful.

### C.     The 2005 Settlement Agreement

33.     In 2005, Burberry objected to Euro Moda and Fanning's distribution and sale of merchandise including jackets, scarves, polo shirts, and hats displaying counterfeits of the Burberry Trademarks.

34.     The parties settled the matter without litigation through the Settlement Agreement dated June 30, 2005.

35.     As part of the Settlement Agreement, Euro Moda and John Fanning admitted to purchasing tens of thousands of shirts, scarves, hats and jackets that bore some or all of the Burberry Trademarks.

36.     Euro Moda and John Fanning also represented as part of the Settlement Agreement that as of September 2003 they no longer had inventory of products bearing some or all of the Burberry Trademarks.

37.    The Settlement Agreement further provides that Euro Moda and Fanning would not, in the future, infringe the Burberry Trademarks or cause, enable or assist any other entity to infringe of the Burberry Trademarks.

38.    As part of the Settlement Agreement, Euro Moda and Fanning also agreed that they would not (individually or through another business entity) purchase, order, offer for sale, sell, distribute or manufacture any items bearing any of Burberry's Trademarks, from any source other than directly from Burberry.

**D.    Defendants' Post-Settlement Agreement Sale of Counterfeit Burberry Merchandise**

39.    On June 1, 2006, Burberry filed suit against Cohoes Fashions of New York, LLC, Burlington Coat Factory Warehouse Corp., Burlington Coat Factory of New York, LLC (the "Burlington Defendants"). *Burberry Limited v. Burlington Coat Factory Warehouse Corp.*, et al., (06 cv 4179 (S.D.N.Y)) (the "Burlington Litigation"). Burberry alleged, *inter alia*, that the defendants in the Burlington Litigation sold merchandise that counterfeited and/or infringed the Burberry Trademarks.

40.    Defendants in the Burlington Litigation identified Moda Oggi, Inc. and Euro Moda, Inc. as suppliers of certain merchandise Burberry had claimed was counterfeit and/or infringing. Defendants in the Burlington Litigation filed a third-party complaint against Moda Oggi and Euro Moda seeking indemnification related to Burberry's claims. *See* Third Party Complaint, attached hereto as Exhibit B.

41.    Purchase orders and related documentation evidencing that the counterfeit and/or infringing Burberry merchandise at issue in the Burlington Litigation was supplied by Moda Oggi and/or Euro Moda was produced by the defendants in the Burlington Litigation.

42.     Moda Oggi, Euro Moda and Fanning knowingly, intentionally and deliberately sold counterfeit Burberry merchandise and/or merchandise that infringed one or more of the Burberry Trademarks to the defendants in the Burlington Litigation after the Settlement Agreement was executed.

43.     Notwithstanding their obligations under the Settlement Agreement and their inclusion as Third Party Plaintiffs in the Burberry Litigation, Moda Oggi, Euro Moda and Fanning continued to sell counterfeit Burberry merchandise. In April 2008, Designers Imports, Inc., an entity that was sued by Burberry for selling counterfeit Burberry merchandise, identified Moda Oggi and Fanning as the source of certain counterfeit Burberry merchandise at issue in that case. *See* portions of Asher Horowitz's April 15, 2008 Deposition Transcript, attached hereto as Exhibit C. Upon information and belief, the Defendants have sold and continued to sell merchandise that counterfeit and infringe the Burberry Trademarks to a variety of other entities as well.

44.     By and through their actions as described above, Moda Oggi, Euro Moda and Fanning knowingly, intentionally and deliberately sold counterfeit Burberry merchandise and/or merchandise that infringed one or more of the Burberry Trademarks in conscious disregard of Burberry's intellectual property rights as well as their contractual obligations as set forth in the Settlement Agreement.

### FIRST CLAIM FOR RELIEF

### (Trademark Counterfeiting Under Section 32 of the Lanham Act)

45.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

46.     Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Burberry Trademarks on goods for which

Plaintiffs hold federal trademark registrations. Defendants have used these spurious designations in connection with the advertising, sale, offering for sale and/or distribution of goods for their own personal financial gain. Defendants' egregious conduct makes this an exceptional case.

47.     Burberry has not authorized Defendants' use of the Burberry Trademarks to advertise, offer for sale, sell and/or distribute Defendants' counterfeit products.

48.     Defendants' unauthorized use of the Burberry Trademarks on and in connection with the advertising and sale of counterfeit goods constitutes Defendants' use of Plaintiffs' registered trademarks in commerce.

49.     Defendants' unauthorized use of the Burberry Trademarks is likely to:

(a)     cause confusion, mistake and deception;

(b)     cause the public to believe that Defendants' counterfeit products are authorized, sponsored or approved by Burberry or that Defendants are affiliated, connected or associated with or in some way related to Burberry; and

(c)     result in Defendants unfairly benefiting from Burberry's goodwill and reputation, to the substantial and irreparable injury of the public, Burberry, its respective trademarks and the substantial goodwill represented thereby.

50.     Defendants' acts as described in this Complaint constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51.     Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry. Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

## SECOND CLAIM FOR RELIEF

### (Trademark and Service Mark Infringement Under Section 32 of the Lanham Act)

52.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

53.    Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant,

> "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . ."

54.    The Burberry Trademarks are federally-registered.  These marks are inherently distinctive and are associated in the mind of the public with Burberry.

55.    Alternatively, based on Burberry's extensive advertising, sales and the popularity of their respective products, the Burberry Trademarks have acquired secondary meaning so that the public associates these trademarks exclusively with Burberry.

56.    Defendants have used Burberry's registered trademarks without its consent or authorization.  Defendants' use, including in the sale and distribution of infringing products in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendants' products emanate or originate from Burberry, or that Burberry has approved, sponsored or otherwise associated itself with the Defendants or their counterfeit products bearing the Burberry Trademarks.

57.    Defendants' unauthorized use of the Burberry Trademarks as set forth above has resulted in Defendants unfairly benefiting from Burberry's advertising and promotion of the Burberry Trademarks.  This has resulted in substantial and irreparable

injury of the public, Burberry, the Burberry Trademarks and the substantial goodwill represented thereby.

58.    Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.    Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry. Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

### THIRD CLAIM FOR RELIEF

### (False Designation of Origin, Trade Name Infringement, and False Description and Representation Under Section 43(a) of the Lanham Act)

60.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

61.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a) provides that

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . . ."
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

62.    By making unauthorized use, in interstate commerce, of the Burberry Trademarks, Defendants have used a "false designation of origin" that is likely to cause

confusion, mistake or deception as to the affiliation or connection of Defendants with Burberry and as to the origin, sponsorship, association or approval of Defendants' services by Burberry, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63.     Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Defendants' products as those of Burberry in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

64.     Defendants' wrongful acts will continue unless enjoined by this Court.

65.     Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry.  Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

## FOURTH CLAIM FOR RELIEF

### (Dilution Under Section 43(c) of the Lanham Act)

66.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

67.     Burberry Limited (UK) is the exclusive owner of the Burberry Trademarks nationwide.

68.     The Burberry Trademarks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and have been famous and distinctive since long before Defendants began using confusingly similar marks.

69.     The BURBERRY® mark, BURBERRY CHECK and EQUESTRIAN KNIGHT DEVICE, shown in Exhibit A hereto, are all inherently distinctive marks that have been in use for many years nationwide and play a prominent role in Burberry's

marketing, advertising and the popularity of its products across many different media. The marks became famous long before Defendants' began using confusingly similar marks on counterfeit merchandise. The Burberry Trademarks have garnered widespread publicity and public recognition in New York and elsewhere nationwide. To enhance its rights further, Burberry has obtained several federal registrations, entitling it to nationwide rights in the BURBERRY® mark, BURBERRY CHECK and EQUESTRIAN KNIGHT DEVICE.

70.     Defendants' use of Burberry's respective trademarks on counterfeit goods that they sell constitutes commercial use in commerce of those trademarks. Burberry has not authorized or licensed this use.

71.     Consumers are likely to purchase Defendants' counterfeit products in the erroneous belief that Defendants are associated with, sponsored by or affiliated with Burberry, or that Burberry is the source of those products. Defendants' use of the Burberry Trademarks dilutes and/or is likely to dilute the distinctive quality of those marks and to lessen the capacity of such marks to identify and distinguish Burberry's goods. Defendants' unlawful use of the Burberry Trademarks in connection with inferior, counterfeit goods is also likely to tarnish those trademarks and cause blurring in the minds of consumers between Burberry and Defendants, thereby lessening the value of the Burberry Trademarks as unique identifiers of Burberry's products.

72.     By the acts described above, Defendants have intentionally and willfully diluted, and/or are likely to dilute, the distinctive quality of the famous Burberry Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

73.     Defendants' wrongful acts will continue unless enjoined by this Court.

74.    Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry. Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

## FIFTH CLAIM FOR RELIEF

### (Deceptive Acts and Practices Under
### Section 349 of New York General Business Law)

75.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

76.    Through their importation, advertisement, distribution, offer to sell and sale of counterfeit products bearing the Burberry Trademarks, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

77.    Defendants' deceptive acts or practices, as described in the paragraph above, are materially misleading. Upon information and belief, these acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Defendants have directed their marketing activities, and Burberry has been injured thereby.

78.    By the acts described above, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 of the New York General Business Law.

79.    Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry. Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

## SIXTH CLAIM FOR RELIEF

### (Dilution and Likelihood of Injury to Business Reputation
### Under Section 360-l of New York General Business Law)

80.     Burberry hereby incorporates by reference and realleges each and every

allegation of Paragraphs 1 through 44 above.

81.     Burberry Limited (UK) is the exclusive owner of the Burberry Trademarks

nationwide.

82.     Through prominent, long and continuous use in commerce, including

commerce within New York, the Burberry Trademarks have become and continue to be

famous and distinctive.

83.     The BURBERRY® mark, BURBERRY CHECK and EQUESTRIAN

KNIGHT DEVICE, shown in Exhibit A hereto, are all inherently distinctive marks that

have been in use for many years nationwide and play a prominent role in Burberry's

marketing, advertising and the popularity of its products across many different media.

The marks became famous long before Defendants' began using confusingly similar

marks on counterfeit merchandise.  The Burberry Trademarks have garnered widespread

publicity and public recognition in New York and elsewhere nationwide.  To enhance its

rights further, Burberry has obtained several federal registrations, entitling it to nationwide

rights in the BURBERRY® mark, BURBERRY CHECK and EQUESTRIAN KNIGHT

DEVICE.

84.     Consumers are likely to purchase Defendants' counterfeit products in the

erroneous belief that Defendants are associated with, sponsored by or affiliated with

Burberry, or that Burberry is the source of those products.  Defendants' use of the

Burberry Trademarks dilutes the distinctive quality of those marks and lessens the

capacity of such marks to identify and distinguish Plaintiffs' respective goods. Defendants' unlawful use of the Burberry Trademarks in connection with inferior, counterfeit goods is also likely to tarnish those trademarks and cause blurring in the minds of consumers between Burberry and Defendants, thereby lessening the value of the Burberry Trademarks as unique identifiers of Burberry's products.

85.     By the acts described above, Defendants have diluted the distinctiveness of the Burberry Trademarks and caused a likelihood of harm to Burberry's business reputation in violation of Section 360–l of the New York General Business Law.

86.     Defendants' wrongful acts will continue unless enjoined by this Court.

87.     Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry. Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

## SEVENTH CLAIM FOR RELIEF

### (Trademark Infringement Under Common Law)

88.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

89.     Burberry Limited (UK) is the exclusive owner of the Burberry Trademarks nationwide.

90.     The counterfeit products sold by Defendants incorporate imitations of Burberry's common law trademarks. Such unauthorized use by Defendants of Burberry's common law trademarks constitutes trademark infringement, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source

of the products and to cause purchasers mistakenly to believe such products are Burberry's authentic goods.

91.    Upon information and belief, Defendants have appropriated one or more of Burberry's common law trademarks despite the fact that this conduct causes confusion, mistake, and deception as to the source of their goods. Defendants palm off their goods as those of Burberry, improperly trading upon Burberry's goodwill and valuable rights in and to the Burberry Trademarks.

92.    Upon information and belief, Defendants committed the above alleged acts willfully, and in conscious disregard of Burberry's rights, and Burberry is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

93.    By the acts described above, Defendants have engaged in trademark infringement in violation of the common law of the State of New York.

94.    Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry. Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

## EIGHTH CLAIM FOR RELIEF

### (Unfair Competition Under Common Law)

95.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

96.    Defendants palm off their goods as those of Plaintiffs, improperly trading upon the Plaintiffs' goodwill and valuable rights in and to the Burberry Trademarks.

97.     Upon information and belief, Defendants committed the above alleged acts willfully, and in conscious disregard of Burberry's rights, and Burberry is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

98.     By the acts described above, Defendants have engaged in unfair competition in violation of the common law of the State of New York.

99.     Defendants' acts have caused, and will continue to cause, irreparable injury to Burberry.  Burberry has no adequate remedy at law and is thus damaged in an amount not yet determined.

### NINTH CLAIM FOR RELIEF (Euro Moda and Fanning)

### (Breach of Contract)

100.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

101.    Defendants Euro Moda and Fanning contractually agreed they would not, in the future, infringe the Burberry Trademarks, or cause, enable or assist any other party's infringement of the Burberry Trademarks.

102.    Defendants Euro Moda and Fanning contractually agreed that they would not (individually or through another business entity) purchase, order, offer for sale, sell, distribute or manufacture any items bearing any of Burberry's Trademarks, from any source other than directly from Burberry.

103.    Defendants Euro Moda and Fanning have materially breached the contract by selling directly, or under the name Moda Oggi, Inc., merchandise that counterfeited

and/or infringed the Burberry Trademarks to the defendants in the Burlington Litigation and other entities.

104.    Euro Moda's and Fanning's breach of the Agreement by and through the means set forth above was willful, intentional and deliberate.

105.    Plaintiff Burberry Limited has upheld the terms of the Agreement.

106.    Plaintiffs have been damaged as a result of the Defendant's breach of the Agreement.

## TENTH CLAIM FOR RELIEF (Defendant John Fanning)

### (Direct and Vicarious Liability – All Counts)

107.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

108.    On information and belief, Defendant John Fanning is jointly and severally liable with Euro Moda and Moda Oggi under all counts of the Complaint.

109.    On information and belief, Defendant John Fanning has intentionally induced Euro Moda and Moda Oggi to counterfeit and/or infringe the Burberry Trademarks.

110.    On information and belief, Defendant John Fanning, through his actions as a principal of Euro Moda, Inc., and Moda Oggi, Inc., is directly, vicariously and contributorily liable for all acts of counterfeiting, infringement and other violations of law alleged in this Complaint.

**WHEREFORE**, Plaintiffs pray:

A.    (i)    For judgment that Defendants have violated Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a);

(ii)    For judgment that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(iii)    For judgment that Defendants have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

(iv)    For judgment that Defendants have engaged in deceptive acts and practices under Section 349 of the New York General Business Law;

(v)    For judgment that Defendants have diluted the Burberry Trademarks in violation of Section 360-l of the New York General Business Law;

(vi)    For judgment that Defendants have engaged in trademark and service mark infringement under the common law of New York;

(vii)    For judgment that Defendants have engaged in unfair competition in violation of the common law of the State of New York; and

(viii)    For judgment that Euro Moda, Inc. and John Fanning breached the Settlement Agreement with Burberry.

B.    That a preliminary and permanent injunction be issued enjoining and restraining Defendants and their officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

(1)    Using any reproduction, counterfeit, copy or colorable imitation of the Burberry Trademarks to identify any goods or their packaging not authorized by Burberry;

(2)    Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiffs' business reputation or dilute the distinctive quality of the Burberry Trademarks;

(3)    Using a false description or representation including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or their packaging as being those of Burberry or sponsored by or associated with Burberry and from offering such goods into commerce;

(4)    Further infringing the Burberry Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products or their packaging not authorized by Burberry Trademarks bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Burberry Trademarks;

(5)    Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Burberry Trademarks in connection with the

promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products or their packaging in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiffs, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiffs;

(6)    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Plaintiffs, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

(7)    Constituting an infringement of any of the Burberry Trademarks or of Plaintiffs' rights in, or to use or to exploit, said trademarks, or constituting any dilution of the Burberry Trademarks;

(8)    Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe or dilute the Burberry Trademarks; and

(9)    Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (8).

C.    Directing that Defendants deliver up for destruction to Burberry all unauthorized products, advertisements and packaging in their possession or under their control bearing any of the Burberry Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

D.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or

associated packaging manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Burberry or related in any way to Burberry's products.

     E.    For an assessment of the damages suffered by Burberry, trebled, and an award of all profits that Defendants have derived while using the Burberry Trademarks, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; alternatively, that Burberry be awarded statutory damages pursuant to 15 U.S.C. § 1117 of up to $1,000,000 for each trademark that Defendants have counterfeited and infringed, as well as attorneys' fees and costs; and awarding profits, damages and fees, to the full extent available, pursuant to Sections 349 and 360-l of the New York General Business Law; and punitive damages to the full extent available under the common law.

     F.    For an order requiring Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge its violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

     G.    For costs of suit, and for such other and further relief as the Court shall deem appropriate.

STEPTOE & JOHNSON LLP

By: _____

Michael J. Allan (MA 8285)
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000

Lenor Marquis Segal (LM 4597)
750 Seventh Avenue
New York, NY 10019
(212) 506-3900

*Attorneys for Plaintiffs*

Dated:  June 26, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served upon the parties listed below by facsimile and

Federal Express on June 26, 2008, a true and correct copy of the annexed **Complaint**.

Kimberlyn W. Brzozowski

Kirk G. Downing, Esq.
9454 Wilshire Boulevard, Suite 600
Los Angeles, CA 90212
*Attorneys for Defendants*

# EXHIBIT A

## Select Listing of Burberry Limited's
## Registered Trademarks

| Registered Mark | United States Reg. Nos. |
|---|---|
| The BURBERRY word mark:<br><br>**BURBERRY** | 1,133,122; 260,843; 259,571; 1,607,316; 1,828,277; 2,629,931; 2,875,336 |
| The BURBERRY CHECK trademark:<br><br> | 1,241,222<br>2,022,789<br>1,855,154<br>2,015,462<br>2,689,921<br>2,845,852 |
| The BURBERRY CHECK (no color designation) trademark:<br><br> | 2,612,272<br>2,732,617<br>2,728,709 |
| The EQUESTRIAN KNIGHT DEVICE trademark:<br><br> | 862,816<br>863,179<br>1,622,186<br>1,903,508<br>2,512,119 |

# EXHIBIT B

Richard Lehv (RL 6097)
FROSS ZELNICK LEHRMAN
   & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Tel: (212) 813-5900
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



BURBERRY LIMITED,

               Plaintiff

           -against-

BURLINGTON COAT FACTORY WAREHOUSE
CORP., BURLINGTON COAT FACTORY OF
NEW YORK LLC and COHOES FASHIONS OF
NEW YORK, LLC,

               Defendants.

Civil Action 06 No. CV 4179 (KMK)

BURLINGTON COAT FACTORY WAREHOUSE
CORP., BURLINGTON COAT FACTORY OF
NEW YORK LLC and COHOES FASHIONS OF
NEW YORK, LLC,

            Third-Party Plaintiffs

              v.

CARRYLAND CORP. and EURO OGGI, INC.,

            Third-Party Defendants.

## THIRD-PARTY COMPLAINT

    Defendants and Third-Party Plaintiffs, Burlington Coat Factory Warehouse Corp. ("BCF"),

Burlington Coat Factory of New York, LLC ("BCF LLC"), and Cohoes Fashions of New York,

LLC ("Cohoes"), by their attorneys, Fross Zelnick Lehrman & Zissu, P.C., for their Third-Party Complaint against Carryland Corp. and Euro Oggi, Inc. (collectively, "Third-Party Defendants"), allege as follows:

## PARTIES

1. Third-Party Plaintiff Burlington Coat Factory Warehouse Corp. is a Delaware corporation with its principal place of business at 1830 Route 130 North, Burlington, New Jersey.

2. Third-Party Plaintiff Burlington Coat Factory LLC is a New York limited liability company, with its principal place of business at 1830 Route 130 North, Burlington, New Jersey.

3. Third-Party Plaintiff Cohoes Fashions of New York, LLC is a New York limited liability company with its principal place of business at 43 Mohawk Street, Cohoes, New York 12047.

4. Third-Party Defendant Carryland Corp. is a New York corporation with its principal place of business at 34 West 33rd Street, New York, New York.

5. Third-Party Defendant Moda Oggi, Inc. is a New York corporation with its principal place of business at 142 West 38th Street, New York, New York. Moda Oggi also does business as Euro Moda, Inc. at the same address.

## JURISDICTION

6. This court has jurisdiction over the claims asserted in the Third-Party Complaint because the claims asserted in the Third-Party Complaint arise out of the same facts and circumstances as the claims asserted in the Complaint, and are so related to the claims asserted in the Complaint that they form part of the same case or controversy. Accordingly, this Court has jurisdiction under 28 U.S.C. §1367(a).

## FACTS

7. Plaintiff, Burberry Limited, filed a complaint against Third-Party Plaintiffs. A copy of the Complaint is attached as Exhibit A. The complaint alleges that Third-Party Plaintiffs have sold products – scarves, hats, shirts and handbags – bearing plaintiff's BURBERRY trademarks,

and that the goods are not genuine, but are counterfeit or otherwise infringe Plaintiff's BURBERRY trademarks.

8.   Cohoes purchased the scarves, hats and shirts complained of by Plaintiff from Third-Party Defendant Euro Oggi, Inc.

9.   BCF purchased the handbags complained of by Plaintiff from Third-Party Defendant Carryland Corp.

10.   The contracts pursuant to which Cohoes and BCF purchased the goods from Third-Party Defendants provide that all goods are sold subject to a claim for indemnification as follows:

> Vendor is authorized by the owners and/or licensees of any and all trademarks, trade names, trade dress, copyrights, patents, and other intellectual property rights associated with goods covered by this purchase order to authorize Purchaser, and Vendor hereby authorizes Purchaser, to resell the goods in the condition (including, without limitation, labels, stickers, logos, etc.) in which the goods are delivered by Vendor. Vendor agrees to indemnify and hold harmless Purchaser from and against any and all judgments, settlements, disbursements, costs (including reasonable attorney's fees) and other expenditures occasioned by any allegations, legal actions or other claims that merchandise purchased hereunder from Vendor infringes any patent, trademark, copyright or other proprietary right of any person, partnership, corporation or other entity or has given rise to liability to any third party or parties for personal injuries and/or property damage under any legal theory including, without limitation, product liability, strict liability, breach of warranty or negligence.

11.   In addition, all the goods purchased by BCF and Cohoes from Third-Party Defendants were sold subject to Section 2-312(3) of the Uniform Commercial Code, which provides,

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

12. In this case, each Third-Party Defendant is "a seller who is a merchant regularly dealing in goods of the kind." Further, Third-Party Plaintiffs did not furnish specifications to the sellers. Accordingly, pursuant to Section 2-312(3) of the Uniform Commercial Code, Third-Party Defendants have breached the warranty against claims of infringement.

13. As a result of the breaches by Third-Party Defendants of the foregoing warranties, Third-Party Plaintiffs have been damaged and will continue to be damaged.

14. Third-Party Defendants are or may be liable for all or part of the Plaintiff's claims against Third-Party Plaintiffs.

WHEREFORE, Third-Party Plaintiffs demand judgment against Third-Party Defendants awarding Third-Party Plaintiffs:

 (a) All sums that may be adjudged against Third-Party Plaintiffs in favor of Plaintiff in this action;

 (b) All damages suffered by Third-Party Plaintiffs as a result of Third-Party Defendants' wrongful conduct;

 (c) All legal fees, costs, and other expenses reasonably incurred by Defendants in the defense or settlement of this action;

 (d) Interest on the foregoing sums; and

 (e) Such other and further relief as the court may deem just and proper.

Dated: New York, NY
  July 6, 2006

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
Richard Lehv (RL 6097)

866 United Nations Plaza
New York, NY 10017
Tel. (212) 813-5900
Fax (212) 813-5901

Attorneys for Third-Party Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Third-Party Complaint is being served on Michael Allan, Esq., of Arnold & Porter, LLP, attorneys for Plaintiff at 555 Twelfth Street, N.W., Washington, D.C. 20004 this ___ day of July, 2006.

Richard Lehv, Esq.

I:\RLEHV\BCFA\Burberry's v. Burlington Coat Factory\060626-0108351-THIRD PARTY COMPLAINT-mjr.doc

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE KARAS**

BURBERRY LIMITED,

Plaintiff,

20**06 CV 4179**

v.

BURLINGTON COAT FACTORY
WAREHOUSE CORP., BURLINGTON
COAT FACTORY OF NEW YORK, LLC and
COHOES FASHIONS OF NEW YORK, LLC,

Defendants.

<u>COMPLAINT</u>



Plaintiff Burberry Limited ("Burberry" or "Plaintiff") complains and alleges

against Defendants Burlington Coat Factory Warehouse Corp. ("BCF"), Burlington Coat

Factory of New York, LLC ("BCF LLC") and Cohoes Fashions of New York, LLC

("Cohoes") (collectively, "Defendants") as follows:

<u>INTRODUCTION</u>

1.      In this complaint, Burberry seeks injunctive relief and damages pursuant

to Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c),

Sections 349 and 360-1 of the New York General Business Law, and the common law of

the State of New York.

2.      Upon information and belief, Defendants have, on several separate

occasions, offered what they purport to be discount authentic Burberry merchandise in

their retail stores that is counterfeit and/or infringes upon Burberry's rights.

3.      For approximately a century, Burberry has devoted substantial resources

to promoting the goodwill of its principal trademarks, including its BURBERRY® name,

BURBERRY CHECK and the Burberry equestrian knight on horseback (the

"BURBERRY KNIGHT"), for a broad variety of goods, including wearing apparel and

accessories, so that these trademarks have become among the most famous marks in this country for such products. Attempting to capitalize on this fame, BCF and Cohoes have sold what they purport to be discount authentic Burberry hats, scarves, polo-style shirts and other apparel. This merchandise, however, is not authentic. In addition, the merchandise displays marks identical to or nearly identical to the BURBERRY® name, BURBERRY CHECK and the BURBERRY KNIGHT.

4.      Defendants' misuse of Burberry's marks on counterfeit products has significantly injured Burberry's reputation and goodwill, and has diluted the distinctiveness of the famous BURBERRY® name, BURBERRY CHECK and BURBERRY KNIGHT. Unless enjoined, Defendants' conduct will continue to injure both Burberry and the public.

## JURISDICTION AND VENUE

5.      This action is based on Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114, Sections 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c), Sections 349 and 360-l of the New York General Business Law, and the common law of the State of New York.

6.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7.      Upon information and belief, defendant Cohoes resides in the State of New York, defendant BCF resides in this district and a substantial part of the events giving rise to the claims occurred in this district. Venue in this Court is therefore proper under 28 U.S.C. §§ 1391(b) and (c).

2

## THE PARTIES

8.      Plaintiff Burberry Limited is a corporation duly organized and existing under the laws of the United Kingdom with a principal place of business at 18-22 Haymarket, SW1Y 4DQ, United Kingdom.

9.      Plaintiff is a sister company of Burberry USA, which is located at 1350 Avenue of the Americas, New York, New York 10019.  Plaintiff and Burberry USA are wholly owned by the same holding company, Burberry Group PLC, and Burberry USA manages the trademarks owned by Burberry Limited in North America, including the BURBERRY® name, BURBERRY CHECK and the BURBERRY KNIGHT.

10.     Upon information and belief, defendant BCF is a Delaware corporation with its principal office located at 1830 Route 130 North, Burlington, New Jersey 08016. BCF is a clothing and retail store that sells designer labels at discounted prices.

11.     Upon information and belief, BCF LLC is a New York limited liability company.

12.     Upon information and belief, BCF and BCF LLC maintain offices at 263 West 38th Street, New York, New York 10018 and operate retail stores throughout the United States, including in New York City.

13.     Upon information and belief, Cohoes is a wholly-owned subsidiary of BCF that maintains its principal office at 43 Mohawk Street, Cohoes, New York 12047. Cohoes is a clothing and retail store that sells designer labels at discounted prices.  Upon information and belief, Cohoes maintains an office or agent in this district.

3

## BACKGROUND

A.    **Plaintiff's Famous Trademarks and Products**

14.    Plaintiff's predecessor in interest, Mr. Thomas Burberry, opened an outfitters shop in Hampshire, United Kingdom, more than a century ago, in 1856. The BURBERRY® name has been used in commerce continuously since that time.

15.    The BURBERRY CHECK trademark -- a distinctive red, camel, black and white check pattern -- was introduced by Mr. Burberry's company in 1924 and has been used on various products over the years, including handbags, clothing, luggage, umbrellas and other items. A photograph showing the BURBERRY CHECK is attached as Exhibit A hereto.

16.    The BURBERRY CHECK has been continuously used in both the original colors and other color combinations for over three-quarters of a century.

17.    The BURBERRY KNIGHT, as shown in the attached Exhibit B, was introduced by Mr. Burberry's company and has been used on numerous products for approximately a century since its introduction.

18.    Plaintiff is responsible for designing and/or licensing, assembling, finishing, marketing and selling in interstate commerce high quality handbags, clothes, footwear, scarves, luggage, watches, eyeglasses, sunglasses, jewelry, cosmetics, writing instruments and many other products.

19.    Burberry's merchandise is sold in department stores, boutiques, BURBERRY® stores and via other legitimate retail establishments.

20.    Plaintiff is the exclusive distributor or licensor in the United States of Burberry merchandise that bears the BURBERRY® name, BURBERRY CHECK and/or the BURBERRY KNIGHT (collectively, the "Burberry Trademarks"). The Burberry

4

Trademarks have thus been used by Plaintiff on, and in connection with, the advertising and sale of Plaintiff's products, including scarves, hats and shirts, in interstate and intrastate commerce, including commerce in the State of New York, and in this judicial district. Plaintiff owns numerous federal registrations for the Burberry Trademarks, as listed in Exhibit C. Copies of the records showing these registrations with the U.S. Patent and Trademark Office ("PTO") are attached as Exhibits D - N.

21.    These registrations for the Burberry Trademarks are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

22.    Burberry has used the Burberry Trademarks for many years on and in connection with BURBERRY® merchandise.

23.    The Burberry Trademarks identify high quality products originating with Burberry. Burberry has expended millions of dollars in advertising BURBERRY® products, and has made substantial investments in protecting its marks and logos.

**B.    Defendants' Unlawful Use of the BURBERRY CHECK and BURBERRY KNIGHT**

24.    Long after Burberry's adoption, use and federal registration of the Burberry Trademarks, Defendants, upon information and belief, commenced the manufacturing, distribution, advertisement, offer for sale, and/or sale of wearing apparel and other products bearing counterfeits and infringements of the Burberry Trademarks.

25.    Upon information and belief, Cohoes and BCF have advertised and promoted as discounted authentic Burberry merchandise goods that are in fact counterfeit and that bear marks nearly identical to the BURBERRY® name, BURBERRY CHECK and BURBERRY KNIGHT. Moreover, Cohoes has offered for sale, continues to offer for sale, and profits from counterfeit merchandise that bears marks nearly identical to the

BURBERRY® name, BURBERRY CHECK and BURBERRY KNIGHT. Specifically, Cohoes has advertised, promoted, offered for sale and sold scarves, hats, polo shirts and other types of goods that are purportedly authentic Burberry merchandise, but that are, in fact, counterfeit.

26.    Upon information and belief, Cohoes has offered for sale, sold and advertised apparel and accessories bearing counterfeits and infringements of the Burberry Trademarks in its retail stores. Upon information and belief, Cohoes has repeatedly engaged in this conduct over a significant period of time.

27.    Upon information and belief, BCF has supplied, facilitated, encouraged or approved of the sale of apparel and accessories bearing counterfeits and infringements of the Burberry Trademarks in its retail stores, including in stores operated by Cohoes.

## COUNT ONE -- TRADEMARK COUNTERFEITING UNDER SECTION 32 OF THE LANHAM ACT

28.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 27 above.

29.    Defendants have used spurious designations that are identical with, or substantially indistinguishable from, Plaintiff's Burberry Trademarks on goods for which the Burberry Trademarks are registered, including scarves, hats and shirts. Defendants have used these spurious designations in connection with the advertising, sale, offering for sale and distribution of goods for their own personal financial gain.

30.    Burberry has not authorized Defendants' use of the Burberry Trademarks to advertise, offer for sale, sell and distribute Defendants' counterfeit products.

31.    Defendants' unauthorized use of the Burberry Trademarks on and in connection with the advertising and sale of counterfeit goods constitutes Defendants' use of Plaintiff's registered Burberry Trademarks in commerce.

32.    Defendants' unauthorized use of the Burberry Trademarks is likely to:

(a)    cause confusion, mistake and deception;

(b)    cause the public to believe that Defendants' counterfeit products are authorized, sponsored or approved by Plaintiff or that Defendants are affiliated, connected or associated with or in some way related to Plaintiff; and

(c)    result in Defendants unfairly benefiting from Plaintiff's goodwill and reputation, to the substantial and irreparable injury of the public, Plaintiff and the Burberry Trademarks and the substantial goodwill represented thereby.

33.    Defendants' acts as described in this Complaint constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT TWO – INFRINGEMENT OF REGISTERED TRADEMARKS UNDER SECTION 32 OF THE LANHAM ACT

35.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 34 above.

36.    Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any person from using in commerce, without the consent of the registrant,

> "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . ."

7

37.    The Burberry Trademarks are federally-registered.  These marks are fanciful and arbitrary and are associated in the mind of the public with Plaintiff.

38.    Based on Burberry's extensive advertising, sales and the popularity of its products, the Burberry Trademarks have also acquired secondary meaning so that the public associates these trademarks exclusively with Burberry.

39.    Defendants use the Burberry Trademarks in U.S. commerce in connection with Defendants' sale, distribution and advertising of their counterfeit goods.

40.    Defendants have used the Burberry Trademarks despite the fact that they are the exclusive property of Plaintiff in connection with the offering for sale, sale and distribution of counterfeit goods.

41.    Defendants have intentionally used Plaintiff's registered trademarks without Burberry's consent or authorization.  Defendants' use, including in the manufacture, sale and distribution of infringing products in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public to believe that Defendants' products emanate or originate from Plaintiff, or that Plaintiff has approved, sponsored or otherwise associated itself with Defendants or their counterfeit products bearing the Burberry Trademarks.

42.    Defendants' unauthorized use of the Burberry Trademarks as set forth above has resulted in Defendants unfairly benefiting from Plaintiff's advertising, promotion, and from the Burberry Trademarks, all to the substantial and irreparable injury of the public, Plaintiff and the Burberry Trademarks and the substantial goodwill represented thereby.

8

43.    Upon information and belief, BCF has supplied, facilitated, encouraged or approved of the sale of apparel and accessories bearing counterfeits and infringements of the Burberry Trademarks in its retail stores, including in stores operated by Cohoes, knowing that Cohoes would sell and offer for sale these counterfeit goods in an effort to mislead the public.  BCF has thus intentionally induced Cohoes to infringe the Burberry Trademarks and has facilitated such infringement.  Defendants' acts constitute direct and/or contributory trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT THREE - FALSE DESIGNATION OF ORIGIN, TRADE NAME INFRINGEMENT, AND FALSE DESCRIPTION AND REPRESENTATION UNDER SECTION 43(a) OF THE LANHAM ACT

45.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 44 above.

46.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a) provides that

Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his

or her or another person's goods, services, or commercial
activities, ....

shall be liable in a civil action by any person who believes
that he or she is or is likely to be damaged by such act.

47.    By making unauthorized use, in interstate commerce, of the Burberry

Trademarks, Defendants have used a "false designation of origin" that is likely to cause

confusion, mistake or deception as to the affiliation or connection of Defendants with

Burberry and as to the sponsorship or approval of Defendants' services by Burberry, in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.    Defendants have, in connection with their goods, used in commerce, and

continue to use in commerce, the Burberry Trademarks.

49.    Defendants have affixed, applied and used in connection with their sale of

goods, false designations of origin and false and misleading descriptions and

representations, including the Burberry Trademarks, which tend falsely to describe the

origin, sponsorship, association or approval by Plaintiff of the counterfeit goods sold by

the Defendants.

50.    Defendants' use of one or more of the Burberry Trademarks on counterfeit

goods causes confusion and mistake, deceives and misleads the purchasing public, trades

upon Burberry's high quality reputation, and improperly appropriates to Defendants the

valuable trademark rights of Plaintiff.

51.    Defendants' acts constitute the use in commerce of false designations of

origin and false and/or misleading descriptions or representations, tending to describe

and/or represent, in a false or misleading fashion, Defendants' products as those of

Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

52.    Defendants' wrongful acts will continue unless enjoined by this Court.

53.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT FOUR – DILUTION UNDER
## SECTION 43(c) OF THE LANHAM ACT

54.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 53 above.

55.    Plaintiff is the exclusive owner of the Burberry Trademarks nationwide.

56.    Plaintiff's Burberry Trademarks are famous and distinctive within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57.    The BURBERRY® name, and the BURBERRY CHECK and BURBERRY KNIGHT shown in Exhibits *A and B hereto, are all inherently distinctive marks that have been in use for many years nationwide and play a prominent role in Plaintiff's advertising across many different media. These marks have become famous long before Defendants began using confusingly similar marks on counterfeit merchandise. Burberry's trademarks have garnered widespread publicity and public recognition in New York and elsewhere nationwide. To enhance its rights further, Plaintiff has obtained several federal registrations, entitling it to nationwide rights in the BURBERRY® name, BURBERRY CHECK and BURBERRY KNIGHT.

58.    Defendants' use of the Burberry Trademarks on counterfeit goods that they sell constitutes commercial use in commerce of the Burberry Trademarks. Burberry has not authorized or licensed this use.

59.    Consumers are likely to purchase Defendants' counterfeit products in the erroneous belief that Defendants are associated with, sponsored by or affiliated with

11

Plaintiff, or that Burberry is the source of those products. Defendants' use of the Burberry Trademarks actually dilutes the distinctive quality of those marks and lessens the capacity of such marks to identify and distinguish Burberry's goods. Defendants' unlawful use of the Burberry Trademarks in connection with inferior, counterfeit goods also tarnishes the Burberry Trademarks and causes blurring in the minds of consumers between Burberry and Defendants, as well as between Burberry and the counterfeit goods, thereby lessening the value of the Burberry Trademarks as unique identifiers of BURBERRY® products.

60.     By the acts described in Paragraphs 1 through 59 above, Defendants have intentionally and willfully diluted the distinctive quality of the famous marks Burberry Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

61.     Defendants' wrongful acts will continue unless enjoined by this Court.

62.     Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT FIVE – DECEPTIVE ACTS AND PRACTICES UNDER SECTION 349 OF NEW YORK GENERAL BUSINESS LAW

63.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 62 above.

64.     Through their advertisement, offer to sell and sale of counterfeit products bearing the Burberry Trademarks, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

12

65.     Defendants' deceptive acts or practices, as described in the paragraph above, are materially misleading.  Upon information and belief, these acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Defendants have directed their marketing activities, and Burberry has been injured thereby.

66.     By the acts described in Paragraphs 1 through 65, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 of the New York General Business Law.

67.     Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

### COUNT SIX -- DILUTION AND LIKELIHOOD OF INJURY TO BUSINESS REPUTATION UNDER SECTION 360-l OF NEW YORK GENERAL BUSINESS LAW

68.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 67 above.

69.     Plaintiff is the exclusive owner of the Burberry Trademarks nationwide, including in New York.

70.     Through prominent, long and continuous use in commerce, including commerce within New York, Plaintiff's Burberry Trademarks have become and continue to be famous and distinctive, since long before Defendants' adoption of the infringing marks at issue here.

71.     Consumers are likely to purchase Defendants' counterfeit products in the erroneous belief that Defendants are associated with, sponsored by, or affiliated with

13

Burberry, or that Burberry is the source of those products. Defendants' use of the Burberry Trademarks dilutes the distinctive quality of those marks and lessens the capacity of such marks to identify and distinguish Burberry's goods. Defendants' unlawful use of the Burberry Trademarks in connection with inferior, counterfeit goods also tarnishes the Burberry Trademarks and causes blurring in the minds of consumers between Burberry and Defendants, thereby lessening the value of the Burberry Trademarks as unique identifiers of BURBERRY® products.

72.     By the acts described in Paragraphs 1 through 71, Defendants have diluted the distinctiveness of Plaintiff's marks and caused a likelihood of harm to Plaintiff's business reputation in violation of Section 360-l of the New York General Business Law.

73.     Defendants' wrongful acts will continue unless enjoined by this Court.

74.     Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT SEVEN –
## TRADEMARK INFRINGEMENT UNDER COMMON LAW

75.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 74 above.

76.     Plaintiff owns all right, title, and interest in and to the Burberry Trademarks as described above, including all common law rights in such marks.

77.     The counterfeit products sold by Defendants incorporate imitations of Plaintiff's common law trademarks. Such unauthorized use by Defendants of Plaintiff's common law trademarks constitutes trademark infringement, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source

14

of the products and to cause purchasers mistakenly to believe such products are Burberry's authentic goods.

78.     Upon information and belief, Defendants have appropriated one or more of Burberry's common law trademarks, causing confusion, mistake, and deception as to the source of their goods.  Defendants palm off their goods as those of Burberry, improperly trading upon the Burberry's goodwill and Burberry's valuable rights in and to the Burberry Trademarks.

79.     Upon information and belief, Defendants committed the above alleged acts willfully, in bad faith, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

80.     By the acts described in Paragraphs 1 through 79 above, Defendants have engaged in trademark infringement in violation of the common law of the State of New York.

81.     Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT EIGHT – UNFAIR COMPETITION UNDER COMMON LAW

82.     Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 81 above.

83.    Defendants palm off their goods as those of Burberry, improperly trading upon the Burberry's goodwill and Burberry's valuable rights in and to the Burberry Trademarks.

84.    Upon information and belief, Defendants committed the above alleged acts willfully, in bad faith, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of Defendants.

85.    By the acts described in Paragraphs 1 through 84 above, Defendants have engaged in unfair competition in violation of the common law of the State of New York.

86.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## COUNT NINE – UNJUST ENRICHMENT UNDER COMMON LAW

87.    Burberry hereby incorporates by reference and realleges each and every allegation of Paragraphs 1 through 86 above.

88.    Upon information and belief, Defendants have been and will continue to be unjustly enriched as a result of their unauthorized use of the Burberry Trademarks on wearing apparel and accessories, thereby depriving Plaintiff of revenues it rightfully should receive by virtue of the use of its famous trademarks.

89.    By the acts described in Paragraphs 1 through 88 above, Defendants have retained revenues to which they are not equitably or legally entitled, and are thereby unjustly enriched at Plaintiff's expense, in violation of the common law of the State of New York.

16

90.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

WHEREFORE, Burberry prays:

A.    For judgment that:

(i)    Defendants have violated Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a);

(ii)    Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

(iii)    Defendants have violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

(iv)    Defendants have engaged in deceptive acts and practices under Section 349 of the New York General Business Law;

(v)    Defendants have diluted Burberry's marks in violation of Section 360-l of the New York General Business Law;

(vii)    Defendants have engaged in trademark infringement under the common law of New York;

(viii)    Defendants have engaged in unfair competition in violation of the common law of the State of New York; and

(ix)    Defendants have been unjustly enriched in violation of New York common law.

B.    That a preliminary and permanent injunction be issued enjoining and restraining Defendants and their officers, agents, servants, employees and attorneys and all those in active concert or participation with them, from:

(1)    Using any reproduction, counterfeit, copy or colorable imitation of the Burberry Trademarks to identify any goods not authorized by Burberry;

17

(2)    Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of the Burberry Trademarks;

(3)    Using a false description or representation including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods as being those of Burberry or sponsored by or associated with Burberry and from offering such goods into commerce;

(4)    Further infringing the Burberry Trademarks by distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products not authorized by Burberry bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Burberry Trademarks;

(5)    Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Burberry Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiff;

(6)    Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by Defendants are in any manner associated or connected with Plaintiff, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

(7)    Constituting an infringement of any of the Burberry Trademarks or of Plaintiff's rights in, or to use or to exploit, said trademarks, or constituting any dilution of Plaintiff's Burberry Trademarks;

(8)    Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe Plaintiff's Burberry Trademarks; and

18

(9)     Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (8).

C.     Directing that Defendants deliver up for destruction to Plaintiff all unauthorized products and advertisements in their possession or under their control bearing any of the Burberry Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

D.     Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products manufactured, sold or otherwise circulated or promoted by Defendants are authorized by Plaintiff or related in any way to Plaintiff's products.

E.     For an assessment of the damages suffered by Burberry, trebled, including an award of all profits that Defendants have derived while using the Burberry Trademarks, trebled, as well as costs and attorney's fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; alternatively, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117 (c) of up to $1,000,000 for each trademark that Defendants have counterfeited and infringed; and awarding profits, damages and fees, to the full extent available, pursuant to Sections 349 and 360-l of the New York General Business Law; and punitive damages to the full extent available under the common law.

F.     For an order requiring Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge its violations of the law

hereunder, and to ameliorate the false and deceptive impressions produced by such

violations.

      G.      For costs of suit, and for such other and further relief as the Court shall

deem appropriate.

Dated: New York, New York
        June 1, 2006

                            ARNOLD & PORTER LLP

By: _____
                  Anthony Boccanfuso (AB 5403)
                  Eleanor M. Lackman (EL-3668)
                  399 Park Avenue
                  New York, New York  10022-4690
                  (212) 715-1000

                        - and -

                  Roberta L. Horton
                  Michael Allan
                  555 Twelfth Street, N.W.
                  Washington, D.C.  20004
                  (202) 942-5000

# EXHIBIT C

**Asher Horowitz**

Page 1

1

2            UNITED STATES DISTRICT COURT

3          SOUTHERN DISTRICT OF NEW YORK

4

  BURBERRY LIMITED and
5 BURBERRY USA,

6                Plaintiffs,

7          vs.          No. 07-cv-3997 (PAC)

8 DESIGNERS IMPORTS, INC.
  d/b/a DESIGNERS
9 IMPORTS.COM USA, INC.,

10              Defendant.

  ------------------------)

11

12

13

14

15       VIDEOTAPED DEPOSITION OF

16            ASHER HOROWITZ

17         New York, New York

18       Tuesday, April 15, 2008

19

20

21

22

23

24 Reported by: SHAUNA STOLTZ-LAURIE
   CSR NO. 810490
25 JOB NO. 202384

**Esquire Deposition Services**
**1-800-944-9454**

**Asher Horowitz**

1
2
3
4
5          April 15, 2008
6          10:30 a.m.
7
8          Videotaped deposition of ASHER
9    HOROWITZ, held at the offices of Arnold
10   & Porter LLP, 399 Park Avenue, New York,
11   New York, pursuant to 30(b)(6) notice,
12   before Shauna Stoltz-Laurie, a Notary
13   Public of the State of New York.
14
15
16
17
18
19
20
21
22
23
24
25

1
2
3
4
5          IT IS HEREBY STIPULATED AND AGREED,
6    by and between the attorneys for the
7    respective parties herein, that filing
8    and sealing be and the same are hereby
9    waived.
10         IT IS FURTHER STIPULATED AND AGREED
11   that all objections, except as to the
12   form of the question, shall be reserved
13   to the time of the trial.
14         IT IS FURTHER STIPULATED AND AGREED
15   that the within deposition may be sworn
16   to and signed before any officer
17   authorized to administer an oath, with
18   the same force and effect as if signed
19   and sworn to before the Court.
20
21
22
23
24
25

1
2  A P P E A R A N C E S :
3
4    ARNOLD & PORTER LLP
5    Attorneys for Plaintiffs
6         555 Twelfth Street, N.W.
7         Washington, D.C. 20004-1206
8    BY:  ROBERT L. HORTON, ESQ.
9         399 Park Avenue
10        New York, New York 10022-4690
11   BY:  ELEANOR M. LACKMAN, ESQ.
12
13   GOODMAN & SAPERSTEIN
14   Attorneys for Defendant
15        600 Old Country Road
16        Garden City, New York 11530
17   BY:  STANLEY R. GOODMAN, ESQ.
18
19
20 ALSO PRESENT:
21     PETER LEDWITH, Videographer
22
23
24
25

1
2          THE VIDEOGRAPHER:  Here begins
3    videotape number one in the deposition
4    of Asher Horowitz in the matter of
5    Burberry v Designers Imports, in the
6    U.S. District Court, Southern District
7    of New York, the case number of which is
8    07-CV-3997 PAC.
9          Today's date is April 15th, 2008.
10   The time is 10:33 a.m. We're at the
11   offices of Arnold & Porter, 399 Park
12   Avenue, New York, New York, and was made
13   at the request of Eleanor Lackman of the
14   law offices of Armand Potter -- Arnold &
15   Porter.
16         The videographer is Peter Ledwith
17   here on behalf of Esquire Deposition
18   Services located at One Penn Plaza, New
19   York, New York.
20         Counsel and all present please
21   identify themselves for the record.
22         MR. GOODMAN:  Stanley R. Goodman.
23   The firm is Goodman and Saperstein,
24   attorneys representing Designers Imports
25   and the 30(b)(6) witness Asher Horowitz.

2 (Pages 2 to 5)

**Asher Horowitz**

Page 270

1      A. Horowitz
2  authentic?
3      A.  Sure.
4      Q.  Okay.  You asked him that?
5      A.  Yes.
6      Q.  Okay, good.
7          What did he say?
8      A.  Definitely yes.
9      Q.  And did he provide any other
10 explanation other than just saying definitely
11 yes?
12     A.  No.
13     Q.  Okay.  Did you question him
14 further?
15     A.  By getting samples constantly.
16     Q.  Okay.  Constantly meaning how many
17 times?
18     A.  Whenever he will offer me, like it
19 could be an offer now, and six months from
20 now I wouldn't figure on all samples.  I'd
21 like to see the lot.
22     Q.  Okay.  Now, when you got all these
23 samples from various suppliers was it because
24 you were concerned that the goods might not
25 be authentic?

Page 271

1      A. Horowitz
2      A.  Just the way I wanted to do
3  business.  I wanted to show them that I'm
4  careful; I watch; I don't buy off the blue.
5  It was my policy, when somebody offered me
6  product, even if I knew the guy.
7      Q.  But did you have some concern that
8  goods weren't authentic, and that's why you
9  wanted to test them and compare them?
10     A.  Just for my -- my own
11 comfortability (sic).
12     Q.  Meaning you were -- wanted to make
13 sure there was no problem --
14     A.  That's it.
15     Q.  -- is that right?
16         Okay.  Now, on page 93 of this same
17 exhibit --
18     A.  Okay.
19     Q.  Okay?
20     A.  Yes.
21     Q.  -- there's a reference to somebody
22 named -- should be Melinda Tucker.  Do you
23 see that, first paragraph?  Issued -- spelled
24 wrong -- from Melinda -- from Melrose to
25 Melinda Tucker, Inc.  Do you see that?

Page 272

1      A. Horowitz
2      A.  I'm looking, but I'm not sure what
3  it.
4      Q.  You don't know what Melinda Tucker,
5  Inc. is, okay.
6          (Counsel confer off the record.)
7      Q.  Okay.  Did you ask Melrose Luxury
8  what its source was for the Burberry-branded
9  goods that it sold to you?
10     A.  Didn't go in particular
11 (inaudible), no.
12     Q.  (Indicating)?
13     A.  No.
14     Q.  No?  Okay.
15         All right, let's move on.
16         THE WITNESS:  Sorry.  Do I keep
17 this?  What do I do with it?
18         MR. GOODMAN:  (Inaudible).
19         MS. HORTON:  Don't worry.  We'll
20 take all of that stuff.
21         (Discussion off the record.)
22         MR. GOODMAN:  I believe Melinda
23 Tucker may be the freight forwarder.
24 That's why they needed that.
25         MS. HORTON:  Okay.

Page 273

1      A. Horowitz
2          Ready?  Okay.  [Horowitz] 21.
3          (Discussion off the record.)
4          ([Horowitz] Exhibit 21, Modaoggi
5  invoices, marked for identification, as
6  of this date.)
7      Q.  Okay.  Tell me when you're ready.
8      A.  I am ready.
9      Q.  Great.  Okay.
10         Modaoggi, M-o-d-a-o-g-g-i, have you
11 ever heard of that company?
12     A.  Yeah.
13     Q.  Okay.  Who was your contact at this
14 company?
15     A.  First name is John.  Last name I'm
16 not sure.
17     Q.  That really narrows it down, John.
18 Okay.
19     A.  I'm trying to think if I remember
20 his last name, because these people always
21 call themselves by the first name.  I never
22 really asked him for his last name.
23     Q.  Okay, John.
24         Is this company still in business;
25 do you know?

69 (Pages 270 to 273)

## Asher Horowitz

Page 274

1        A. Horowitz
2    A.   Yes.
3    Q.   Okay, how do you know that?
4    A.   Because I order stuff from him.
5    Q.   What's the last time you ordered
6 stuff from him?
7    A.   I can't recall that, but this year.
8    Q.   2008.
9    A.   Yeah.
10   Q.   Okay. Was it before March 2008?
11   A.   I can't --
12   Q.   Okay. How did you come into
13 contact with Modaoggi?
14   A.   I think I remember meeting at a --
15 bumping into him at a show in Las Vegas
16 particular.
17   Q.   Okay. That's the first time you
18 met him?
19   A.   Yeah, a couple of years ago he had
20 a booth, and he had some branded goods on
21 that table, and the first time I bumped into
22 him.
23   Q.   Including Burberry-branded goods?
24   A.   I don't remember what he had there,
25 but it was just like by accident.

Page 275

1        A. Horowitz
2    Q.   Okay. Yeah.
3        What show was this; do you
4 remember?
5    A.   Apparel show. It's called --
6 remind me if you know the names.
7    Q.   No, but I know it was a big --
8        MR. GOODMAN: It's not the Magic
9 Show.
10   Q.   Not the Magic Show?
11   A.   We call it the Magic Show. They
12 have an apparel show, but I'm not sure what
13 it is.
14   Q.   The Magic Show is an accessories
15 show.
16   A.   I happened to walk around the show
17 just for the fun of it, and I bumped into
18 this man right before leaving.
19   Q.   John.
20   A.   Yeah. But I can't remember his
21 last name.
22   Q.   Does he have a business card?
23   A.   Never had them.
24   Q.   Never?
25   A.   At the time of the show maybe, but

Page 276

1        A. Horowitz
2 not that I --
3    Q.   Okay. Have you since had any
4 contact with him?
5    A.   Since that show?
6    Q.   Yeah.
7    A.   If I ever met him? I can't recall
8 that.
9    Q.   Okay. Did you ever ask John or
10 anybody else at the company whether the items
11 were authentic?
12   A.   Yes
13   Q.   And when what did they say?
14   A.   Definitely yes.
15   Q.   And did you ever ask them why they
16 thought the items were authentic?
17   A.   They told me in particular -- I
18 remember having lots of conversation with
19 him, and he bought it in England somewhere at
20 -- after -- I'm not sure exactly what he told
21 me then, but -- it was a long time ago -- but
22 he bought a big scarf in England once.
23   Q.   Did he give you any documentation
24 to show you that?
25   A.   No.

Page 277

1        A. Horowitz
2    Q.   Okay. And did you do anything
3 further to make sure the goods were
4 authentic?
5    A.   Same as I did with all the other
6 ones.
7    Q.   You got a sample and you compared
8 (speaking simultaneously) --
9    A.   Looked at it.
10   Q.   Okay. Do you remember what sample
11 you got?
12   A.   No.
13   Q.   Okay. Was it a scarf?
14   A.   Yes.
15   Q.   Okay. Do you know where this
16 company is located now?
17   A.   I -- I only know about a
18 Connecticut address. I never knew another
19 address for him.
20   Q.   When you say a Connecticut address?
21   A.   I don't remember this address, but
22 remember that it was Connecticut. I don't
23 remember the address in particular.
24   Q.   Okay. The address that we see on
25 this Exhibit 21 is in Darien, D-a-r-i-e-n,

70 (Pages 274 to 277)

**Page 278**

1       A. Horowitz
2 Connecticut.
3    A.  Right.
4    Q.  Do you recall Modaoggi having a
5 different address in Connecticut?
6    A.  I never looked -- I never went -- I
7 was never at a location that I should
8 remember the address.
9    Q.  Did you ever go to Modaoggi's
10 business?
11   A.  Never.
12   Q.  Never.
13   A.  Never.
14   Q.  Okay.  And nobody working for you
15 went there.
16   A.  Never.
17   Q.  Did you ever send letters or money
18 to that -- to Modaoggi in Connecticut?
19   A.  I mail them checks, and I remember
20 a Connecticut address, but I can't recall
21 which address in Connecticut.
22   Q.  Okay.  Are you aware that the
23 company has vacated its premises in Darien?
24   Do you know what that means?
25   A.  Vacating means they're not there

**Page 279**

1       A. Horowitz
2 anymore.
3    Q.  Right.  They left their premises.
4    A.  In Connecticut?  No, I never --
5    Q.  Yes.
6    Do you have anything understanding
7 why the company would do that?
8    A.  I didn't know about that.
9    Q.  Okay.
10   (Counsel confer off the record.)
11   Q.  Okay.  Page 62 there's a bunch of
12 handwriting --
13   A.  Okay.
14   Q.  -- okay?
15   Is that your handwriting?
16   A.  Yes.  I -- I said yes, but I'm not
17 sure it's mine or David's.  Maybe it's mine.
18 I'm not sure.
19   Q.  Okay.  What does this represent in
20 general; do you know?
21   A.  It looks like colors.
22   Q.  N?
23   A.  I would say the N is Nova, C is
24 camel (inaudible) --
25   (Discussion off the record.)

**Page 280**

1       A. Horowitz
2    A.  (Continuing) The N is Nova, the C
3 is camel.  I would say the BK is black.
4    Q.  That's what I would guess, yeah.
5 Okay.
6    And what about this OW, DB, OG at
7 the bottom?
8    A.  Those are -- LP stands for Loro
9 Piana scarves that I bought from him.
10   Q.  Ah.
11   A.  I would say OW is off white, DB
12 dark brown, DG is dark grey.
13   Q.  Okay.  Okay.  Now, have you been in
14 touch with Modaoggi to discuss this lawsuit
15 at all?
16   A.  No.
17   Q.  The Burberry lawsuit?
18   A.  No.
19   Q.  Okay.  Do you know if your lawyers
20 informed Modaoggi that it would get
21 subpoenaed in this lawsuit?
22   A.  I haven't asked that.
23   Q.  You know what a subpoena is.
24   A.  Yes.
25   Q.  Okay, good.

**Page 281**

1       A. Horowitz
2    Now, besides John is there anybody
3 else that you dealt with at Modaoggi?
4    A.  Once or twice if he wasn't in town
5 a girl would call me, but I don't recall the
6 name.
7    Q.  Okay.  Okay.  All right.
8    A.  But I never dealt with her, so I
9 don't know who it is.
10   Q.  Okay.  And you testified that you
11 couldn't recall when you most recently dealt
12 with Modaoggi.
13   A.  For the last certain purchase?  No.
14   Q.  Okay.  Did you ask Modaoggi where
15 it got the Burberry-branded goods from?
16   A.  When I originally asked him, I
17 remember him telling me in England.
18   Q.  Okay.  Did you ask him more than
19 once?
20   A.  I don't think so.
21   Q.  Okay.  Did they give any more
22 specifics other than just saying England?
23   A.  No.
24   Q.  Okay.
25   (Counsel confer off the record.)

71 (Pages 278 to 281)